IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY G. SHARP,                   Civ. No. 6:12-cv-140-AA
                                                           OPINION AND ORDER
       Plaintiff,

   v.

CHRISTIAN STRINGER, CAROL
CALLAHAN, SHAWN HOUCK,
RICHARD BRENNER, BENTON
COUNTY DISTRICT ATTORNEYS
OFFICE (OR), KAREN KEMPER,
CITY OF CORVALLIS (OR),
OREGON CASCADES WEST COUNCIL
OF GOVERNMENTS,

       Defendants.
_____

AIKEN, Chief Judge:

       Plaintiff, appearing pro se, filed suit alleging false arrest, malicious prosecution, and a claim for loss of consortium. Plaintiff alleges that he was wrongly arrested and prosecuted for Criminal Mistreatment in connection with the condition of his elderly mother. The court previously dismissed plaintiff's claims

1    - OPINION AND ORDER

against defendant Kemper, finding that she was immune from suit as her alleged actions constituted the performance of prosecutorial functions as an advocate of the State. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Lacey v. Maricopa Cnty., 649 F.3d 1118, 1127 (9th Cir. 2011). The court also dismissed claims against the Benton County District Attorney's Office pursuant to Eleventh Amendment immunity. The remaining defendants and plaintiff now move for summary judgment regarding plaintiff's claims. Defendants' motions are granted, and plaintiff's are denied.

BACKGROUND

On January 20, 2011, plaintiff brought his mother, Marjory Sharp, to Good Samaritan Hospital. Plaintiff reported that Marjory was "more confused than usual" and then left the hospital. Van Meter Decl. Ex. A at 1, 4. When Marjory arrived at the hospital, she was "very unclean," with a foul odor and "poor hygiene," and unable to care for herself. Id. She was diagnosed with a urinary tract infection and dementia and admitted to the hospital.

On January 31, 2011, Officer Brenner was dispatched on a complaint of sex abuse after a medical social worker reported that Marjory stated that she had been attacked by three men who attempted to rape her. After receiving the complaint, Officer Brenner called the social worker, who informed him that Marjory was taken to the hospital by plaintiff, who was Marjory's caretaker. Officer Brenner was also told that Marjory was very unclean, unable

to care for herself, and suffering from a urinary tract infection and dementia. The social worker told Officer Brenner that on multiple occasions Marjory had complained about sexual abuse allegedly occurring in the home.

The medical social worker informed Officer Brenner that plaintiff allowed transients to live in his house, where Marjory also resided. Officer Brenner was told that plaintiff had considered a private or state-provided caretaker for Marjory, but he decided against such an arrangement after learning that a portion of Marjory's benefit payments would be used to pay for the caretaker. The medical social worker believed that plaintiff did not pursue alternate caretaker arrangements, because plaintiff was financially dependent on Marjory's income. The social worker felt that Marjory was not capable of making caretaker choices for herself, and the decision would be plaintiff's to make on her behalf. Van Meter Decl. Ex. A at 5.

The medical social worker also reported that Senior Services had been involved Marjory's situation. Senior Services had investigated Marjory's living conditions, found improvements were needed, and instructed plaintiff to clean the home before Marjory could return. Id.

Officer Brenner then spoke with Marjory at Good Samaritan Hospital. When he first arrived, Marjory immediately told Officer Brenner that she knew him, because plaintiff talked about him

3   - OPINION AND ORDER

constantly and she knew he had a "strong Irish name." Officer Brenner believed he had never before met Marjory. Brenner Decl. at 2.

Officer Brenner asked Marjory if she would speak with him about the sex abuse allegations, and she told him that the attempted sex abuse occurred approximately two months ago. She explained to him that three men had grabbed her and started to remove her clothing, and she had pushed the men away from her. Officer Brenner asked Marjory if she felt she was living in a safe environment, and she told him "I would say it's not." Brenner Decl. at 3. She also told Officer Brenner that she did not feel comfortable with the people who were living in the home and worried that they would steal from her. She said she was "afraid to leave" the home, and that she feels unsafe when her son is not at home with her. Id. Marjory told Officer Brenner that plaintiff would sometimes leave her alone in the care of people living at their house. Marjory said people brought her food, but if they had not she "would have starved to death." Brenner Decl. at 3.

Officer Brenner asked Marjory if she felt that she could care for herself, and she said: "No, I don't feel that I can currently take care of myself." Id. When asked if she could take her medications by herself, Marjory responded that she could and explained she places her medications in the drawer of a coffee table. However, she could not recall where the coffee table was

located. Marjory also told Officer Brenner that there was no phone in the house and that she has problems with walking and falling. Officer Brenner asked Marjory if she considered her son as her caretaker, and she told him "yes."

Officer Brenner then spoke to Marjory's care provider at the hospital. He asked the provider if she felt Marjory was capable of taking care of herself, and she answered "No." She explained to him that Marjory had been dehydrated when she was brought to the hospital, and that she believed Marjory forgets to take care of herself. Based on the information he was provided, it appeared to Officer Brenner that Marjory did not have the capacity to care for herself and was exhibiting signs of dementia. Brenner Decl. at 4.

After speaking to Marjory and hospital staff, Officer Brenner contacted the District Attorney's Office and spoke with defendant Stringer about the investigation. Stringer informed Officer Brenner that probable cause likely existed to support a charge of Criminal Mistreatment 2 against plaintiff, given Marjory's condition.

Officers Brenner and Houck then contacted plaintiff at his residence and recorded their conversation with him.

Officers Brenner and Houck asked plaintiff about his mother's condition. Plaintiff explained the living situation in the home and stated that transients staying there would help care for Marjory. The officers learned that Kimball Craig and Gary Goodwin were two of the individuals living at the house. From their experience, the

officers knew that both men were convicted felons, with Goodwin being a sex offender and Craig being arrested for narcotics offenses on several occasions. Brenner Decl. at 4.

Plaintiff also informed the officers of the following information:

1) Marjory had been hiding food and not eating;

2) he considered himself Marjory's caregiver;

3) Marjory did not feel comfortable in the home, though he believed she was just paranoid;

4) Marjory "at times [had] severe dementia";

5) the conditions of the home were not acceptable prior to Marjory's admittance to the hospital.

Brenner Decl. at 4-5 and attached exhibits. As a result of the investigation, plaintiff was arrested and charged with Criminal Mistreatment 2. Plaintiff consented to have no contact with Marjory while the criminal charges were pending. Franz Aff. Ex. 103. The Benton County Circuit also entered a no contact order between plaintiff and his mother, though the order was later revised to allow limited contact. Id. Exs. 101, 103. The limited contact order remained in place pending the criminal charges.

The criminal case proceeded to a bench trial in Benton County Circuit Court. At the conclusion of the bench trial, though purportedly finding Marjory's living conditions unacceptable, the court found plaintiff not guilty of Criminal Mistreatment 2.

6    - OPINION AND ORDER

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the relevant issue, while the authenticity of a dispute is determined by whether a reasonable jury could return a verdict for the nonmoving party in light of the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of establishing the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, a genuine issue of fact does not arise where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

7   - OPINION AND ORDER

DISCUSSION

The court construes plaintiff's complaint as alleging claims of false arrest, malicious prosecution and interference with familial relations in violation of the Fourth and Fourteenth Amendments. Plaintiff also purports to allege a First Amendment violation. However, I find that plaintiff fails to present any credible evidence to support these claims.

First, the facts known by Officers Brenner and Houck and Stringer established probable cause that plaintiff committed the misdemeanor offense of Criminal Mistreatment 2, given Marjory's physical and mental conditions and her living arrangements, the lack of adequate care given to Marjory, and the manner in which she was left at the hospital. See, e.g., Van Meter Decl. Ex. A. Based on these facts, the officers and Stringer would have possessed probable cause that plaintiff withheld necessary and adequate food and medical care so as to support a charge of Criminal Mistreatment 2. See Or. Rev. Stat. § 163.200.[1] Probable cause for arrest

---

[1] Or. Rev. Stat. § 163.200 provides:

(1) A person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and:

    (a) In violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person[.]

A "legal duty" includes "but is not limited to a duty created by *familial relationship*, court order, contractual agreement or statutory or case law." Id. § 163.200(3) (emphasis

8    - OPINION AND ORDER

vitiates plaintiff's claim of false arrest. See Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011). Further, plaintiff fails to present evidence of malicious prosecution on the part of defendant Stringer. Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004) (malicious prosecution claim may be brought against official who "knowingly provided misinformation" or "otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings"). The fact that plaintiff ultimately was found not guilty of the charge does not affect the existence of probable cause.

Second, plaintiff presents no evidence showing that any of the defendants interfered with his relationship with his mother. Plaintiff delivered Marjory to the hospital and left her there. Any limitation on plaintiff's contact with Marjory was imposed by a state court judge, and the no contact order was modified to allow limited contact. Plaintiff presents no evidence that any defendant prevented plaintiff from seeing or visiting his mother. The fact that Marjory did not return to a home filled with garbage and filth and where transients and convicted felons resided does not show interference with his familial relationship. Franz Aff. Ex. 102; United States v. Wolf Child, 699 F.3d 1082, 1092 (9th Cir. 2012).

---

added). Although the statute does not apply "[w]hen a competent person refuses food, physical care or medical care," the undisputed evidence here, including plaintiff's own statements, establishes that Marjory experienced dementia and arguably was not "competent." Or. Rev. Stat. § 163.206(3).

Third, for the reasons set forth above, no credible evidence suggests that plaintiff was arrested because of his previous, protected speech. Lacey, 649 F.3d at 1132-33; Orin v. Barclay, 272 F.3d 1207, 1216-17 (9th Cir. 2001).

Finally, plaintiff fails to show that he suffered any violation of his rights stemming from an official policy, practice or custom of the City of Corvallis or other entity. Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).

Even if plaintiff had established a constitutional violation, I find that defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

To ascertain whether qualified immunity applies, the court determines whether a deprivation of a constitutional right occurred and whether that right was clearly established at the time of the deprivation. Id. at 232-36. Further,

> a district court should decide the issue of qualified immunity as a matter of law when the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts. Only where historical facts material to the qualified immunity determination are in dispute should the district court submit the issue to a jury.

Conner v. Heiman, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotation marks and citations omitted). I find that no disputed issues of fact preclude the application of qualified immunity.

Plaintiff presents no credible or admissible evidence to dispute that Officers Brenner and Houck were informed that Marjory could not care for herself and plaintiff was her caretaker; plaintiff would leave Marjory alone for days; plaintiff's house was unsuitable and dirty, with transients and felons living there and "caring" for Marjory; and, when brought to the hospital Marjory was unclean, dehydrated, and suffering from dementia and a urinary tract infection. Further, Officers were informed that plaintiff delivered Marjory to the hospital, saying she was "more confused than normal," and then left her there. While at the hospital, Marjory complained of stolen medication and being sexually assaulted by unknown men in the house several weeks prior. The officers also had been informed that plaintiff did not pursue other caretaking arrangements for Marjory due to plaintiff's financial dependence on her income. Brenner Decl.; Van Meter Decl. Ex. A. This information also served as the basis for Stringer's opinion that probable cause likely existed for Criminal Mistreatment 2.

Based on these facts, no reasonable officer, district attorney or state social worker would have believed that their actions in protecting Marjory's well-being and interests nevertheless violated plaintiff's clearly established statutory or constitutional rights.

11   - OPINION AND ORDER

Pearson, 555 U.S. at 231; Rosenbaum, 663 F.3d at 1078-79; Orin, 272 F.3d at 1216-17.

In sum, no evidence supports plaintiff's claims, and defendants' motions for summary judgment are granted. If not for plaintiff's in forma pauperis status, the court seriously would consider the imposition of sanctions and attorney fees against plaintiff for filing and pursuing a frivolous lawsuit.

## CONCLUSION

Accordingly, defendants' Motions for Summary Judgment (docs. 53, 79, 92) are GRANTED, and plaintiff's Motions for Summary Judgment (docs. 59, 76) are DENIED. This action is HEREBY DISMISSED.

IT IS SO ORDERED.

Dated this 16th day of May, 2013.

_____
Ann Aiken
United States District Judge

12  - OPINION AND ORDER